LIBERTY INSURANCE COMPANY OF TEXAS et al., Appellants,

v.

Arnold E. RAWLS et al., Appellees.

No. 16339.

Court of Civil Appeals of Texas.

Fort Worth.

June 15, 1962.

Rehearing Denied July 13, 1962.

---

Frank E. Crumley and Roswald E. Shrull, Fort Worth, for appellant Liberty Ins. Co. of Texas.

Kelly, Morris & Walker, and Jearl Walker, Fort Worth, for appellant Allstate Ins. Co.

Cal Estill and Fay W. Prescott, Fort Worth, for appellee Arnold E. Rawls.

Biggers, Baker, Lloyd & Carver and Spencer Carver, Dallas, for appellee Robert L. Harrison.

Harrison & McKnight, and John F. Harrison, Dallas, for appellee Service Fire Ins. Co. of New York.

MASSEY, Chief Justice.

Arnold E. Rawls, while driving a Ford pickup on February 27, 1959, was involved in a collision in Tarrant County with an automobile operated by Robert L. Harrison. Rawls sustained personal injuries as the result of the collision, by reason of which he brought suit against Harrison and ultimately obtained a judgment for damages in the amount of $8,300.00. This suit will be hereinafter referred to as the damage suit.

At the time of the collision Harrison owned a 1957 Ford sedan, but he was not using the same at the time and place of the collision, and it may be treated as having been left at his home in Dallas, Texas. Under a Texas Standard Form Family Automobile policy of insurance, issued by Liberty Insurance Company of Texas, describing this 1957 Ford sedan, Harrison was listed as the "named insured".

This policy afforded to Robert L. Harrison bodily injury liability insurance with the limits of said liability being "5 thousand dollars each person," "10 thousand dollars each occurrence", and property damage liability insurance to "ACV thousand dollars each occurrence", even though said liability arose out of the use by Harrison of an automobile which he did not own. In such an event, however, the insurance so afforded was provided to be "excess insurance over any other valid and collectible insurance".

The automobile being driven by Harrison at the time and place of the collision belonged to E. M. Moore, of Dallas County, same being a 1959 Ford Ranchero. Under a Texas Standard Form insurance policy, issued by Allstate Insurance Company, describing said automobile, with Moore listed as the "named insured", liability insurance was provided for Moore and "any person while using the automobile * * * provided the actual use * * * is * * * with the permission of either (the named insured or his spouse)." The extent of the protection afforded thereby was "$10,000 Each Person—$20,000 Each Accident" as applied to Bodily Injury Liability, and "$5,000 Each Accident" as applied to Property Damage Liability.

As of the time of the collision in Tarrant County with the automobile driven by Arnold Rawls, and for a considerable time prior thereto, Harrison was an employee of Horn-Williams Motor Company, an automobile sales agency and repair garage of Dallas, Texas. Harrison's job was that of a salesman. Horn-Williams Motor Company carried what is known as a Garage Liability insurance policy with Trinity Universal Insurance Company, and this policy listed the names of the individuals, partners, doing business as the Horn-Williams Motor Company, as the "named insureds" thereunder. Said policy listed no automobiles by description of any sort, but afforded liability insurance protection to the "named insureds" to the extent of "$100,000.00 each person", $300,000.00 each accident", as applied to Bodily Injury Liability, and to the extent of "$25,000.00 each accident" as applied to Property Damage Liability. Operations and activities as to which the protection of the policy was pro-

vided to be afforded were that of "The ownership, maintenance or use of the premises for the purpose of an automobile sales agency, repair shop, service station, storage garage or public parking place, and all operations necessary or incidental thereto; and the ownership, maintenance *or use of any automobile in connection with the above defined operations, * * *.*" (Emphasis supplied.) Under the policy the "insured" thereunder included the parties who were "named insureds" and also "any * * * employee * * * *while acting within the scope of his duties as such, * * *.*" (Emphasis supplied.)

■ We here take occasion to note that an employee of the "named insured" under a garage liability policy is also an "insured" under the same policy as to any personal liability to third persons injured as the result of an automobile collision involving a vehicle driven by such employee with a third person, provided the employee is, at the time, acting within the scope and course of his employment. Should such a third person sue the employee as the result of collision the employee would be insured by the policy whether the complaint against him asserted his agency and employment or not, and without regard to whether his employer was named as a party defendant in the same suit.

We will also take occasion at this time to note that the 1959 Ford automobile of Mr. Moore, which was the vehicle being driven by Harrison at the time of the collision, was covered by a policy of collision insurance with the Service Fire Insurance Company of New York. Under said policy, and by reason of the damage done to the Moore automobile in the collision, this company paid to Moore a little more than $1,000.00 in settlement of its contractual insurance obligation, becoming subrogated to Moore's rights as against Harrison or any other person to the extent of the payment so made.

Under Harrison's liability policy (with Liberty) and likewise under Moore's lia-

bility policy (with Allstate) there was a provision which excluded protection against liability, otherwise afforded under the policy, of any person other than the "named insured" and his spouse who might use the vehicle described in the policy with the permission of the party so expressly insured if said user was a person or organization, *or an agent or employee thereof,* operating an automobile sales agency, repair shop, etc., with respect to any accident arising out of the operation thereof. (Emphasis supplied.)

Insurance policy provisions prescribing conditions and circumstances as to which the coverage of the policy is excluded almost inevitably have as a purpose the removal from one policy of a coverage, which is, for one reason or another, more advantageously handled in another policy. This is typified in this case. It is a garage liability policy which normally insures automobile sales agencies, repair shops, service stations, storage garages and public parking places. If pursuant to said forms of business enterprise an agent, servant or employee thereof is involved in an accident under circumstances which create a condition of actual or potential liability upon his employer, it is deemed by the insurance industry, with concurrence of the Texas Insurance Commission, that the investigation, suit defense, and retirement of the obligation to pay damages, if any, by reason of the accident should come under a garage liability policy and not under an individual or family automobile liability policy.

In the event of an accident, such as the one under consideration, it is to the interest of the employer of a driver involved in a collision (and by and through said employer likewise to the interest of said employer's garage liability insurer) that it be determined in the event of any suit that the driver involved in the collision was not an employee of the policyholder or was not acting within the scope and course of his employment or for the benefit of the policyholder. Unless employment and agency thereunder exists the employer policyholder

924

would stand acquitted of any liability to any third party injured as the result of the collision, and the garage liability insurer likewise acquitted, without regard to the matter of whether the driver involved might be convicted of negligence and a judgment for damages entered against him.

It is the more ordinary individual or family type of automobile liability insurance policy that provides for the protection of the insured named on the face of the policy (usually the owner who pays the premium), plus like protection to any person who operates the automobile described in the policy with the permission of the named insured. In the event of a collision involving the automobile at a time when a person other than the owner is operating the same, the insurance company is immediately interested in determining whether the operator in fact had the named insured's permission to be driving the vehicle at the time and place thereof, for if such not be the fact said operator would not be entitled to have said insurer furnish a defense to claims and/or suits arising out of the collision, or to have his liability to pay damages, if any, satisfied by the insurer.

The circumstances of the instant case were complicated by reason of the fact that not only was there a question existent as to whether Harrison in fact had the permission of Moore to be driving the latter's autombile at the time and place of the collision, but by an additional question as to whether Harrison was acting as an agent, servant and employee for Horn-Williams Motor Company, an automobile sales agency and repair garage. The individual or family type automobile liability insurance policy specifically excludes any liability under such circumstances. Such an insurance company, whose policy described the automobile involved in a collision and whose contract provided for its defense and indemnity to the operator thereof only if said operation was with the permission of the "named insured", even though that question be left to be resolved, would additionally be interested in the question of

whether said operator's use of the non-owned automobile was that of an agent or servant of an automobile sales agency and repair garage acting within the scope and course of his employment. If such latter question should be determined in the affirmative, and that such was the character of the use, no legitimate claim could be made against the insurer under the individual or family type policy and such insurance company would stand relieved of any contractual liability. Of course, either or both questions might present an issue of fact, determinable by factual findings or conclusions peculiarly within the province of a jury or other fact finding agency.

We have heretofore noted the fact that Rawls filed and prosecuted his damage suit to judgment against Harrison, obtaining an award of $8,300.00. It is not necessary to detail any matters relative to the facts and circumstances of the collision. For our purposes the important facts relate to the circumstances under which Harrison happened to be driving Moore's automobile at the time of the collision, the events relative to the demands Harrison made upon various insurance companies for defense and indemnity, and the events incident to the trial of the damage suit and up until judgment therein became final.

In January of 1959, Moore purchased the Ford Ranchero from the Horn-Williams Motor Company, Harrison acting as the salesman in the transaction. The automobile developed trouble of various kinds and Moore had had occasion to take it back to Horn-Williams Motor Company on two occasions prior to the one with which we are immediately concerned. It was on February 26, 1959, that Moore brought his automobile to the Horn-Williams Motor Company for the third time. Shortly theretofore he had talked with Harrison on the telephone and Harrison had told him to "Bring in your automobile and we will get it repaired." Upon arrival at the premises Moore contacted Harrison, and the two persons took the automobile into the service department of said motor company and discussed the

trouble with the manager of the department. The service manager indicated that it might be possible that the repairs could not be completed until the following day and that Moore should wisely plan on leaving the car overnight. To this Moore agreed. It was agreed further that Moore would take and drive the "demonstrator" ordinarily used by Harrison, but belonging to Horn-Williams Motor Company, with Harrison to use the Moore automobile that night and the next morning in place of the "demonstrator". Concerning the matter of the contemplated repairs to Moore's automobile, Moore stated to Harrison, "I want you to test drive it and see that it is properly repaired." One of Moore's principal complaints was the way the automobile steered. He asked Harrison to drive it home that night after the shop personnel worked on the car and see if the car steered all right and if he found anything wrong to put it back in the shop the following morning. Evidence in the record establishes the fact that it was no part of the authority of Harrison to road test any automobile for and in behalf of the Horn-Williams Motor Company.

While there is some uncertainty as to whether the repairs to the Moore automobile were completed as of the end of the day on February 26, there does not seem to be any doubt but that it was represented to Harrison as a vehicle suitable to be driven. Except for the Moore automobile, Harrison would have had no vehicle to drive home at the end of that day, the "demonstrator" which had been assigned to him being in the hands of Moore. Harrison did take Moore's automobile and drove it home. Afterward he decided to make a trip in the automobile up to his fishing camp in Wise County, Texas, to reach which point he traveled through Tarrant County. After having been at the camp he was on the return trip to Dallas, late in the evening, when the collision in question occurred.

After the collision, Harrison's affairs were turned over to Mr. Spencer Carver, an attorney and personal friend. There is no question but that timely and adequate notice of the facts and circumstances of the collision was served upon all three insurance companies,—i. e., Allstate Insurance Company, as the liability carrier whose policy described the Moore automobile, Liberty Insurance Company of Texas, whose policy listed Harrison as its "named insured", and the Trinity Universal Insurance Company, which had written the garage liability policy on the operations of the Horn-Williams Motor Company. All three companies made such investigation into the facts and circumstances as they desired.

Subsequently Rawls filed a suit, being the damage suit in question, naming as the defendant Mr. Robert L. Harrison. No defendant other than Harrison was named. Attorney Carver, acting for and in behalf of Harrison, promptly and timely served notice thereof upon all three of the aforementioned insurance companies along with a demand that a defense to the suit be furnished. None of the companies furnished any defense. The time for an answer arriving, Carver filed a plea of privilege in behalf of Harrison in order to obviate the risk of any default judgment being taken, notifying all three insurance companies thereof and again demanding that said companies furnish defense and indemnity under the policies of insurance.

On June 30, 1959, the Trinity Universal Insurance Company (which issued Horn-Williams' garage liability policy) wrote to Carver and stated that said company did not anticipate undertaking any defense of Harrison since its investigation revealed that Harrison was entirely outside the scope of his employment and on an entirely personal mission at the time and place of the accident. On June 29, 1959, the Liberty Insurance Company of Texas (which issued the liability insurance policy on Harrison's personal automobile) wrote to Carver and stated that since Harrison had permission of Moore to drive the Moore automobile, the adjuster for Allstate Insurance Company

(which issued the policy on the Moore automobile) had agreed to defend the suit against Harrison. Allstate did not write a letter in reply; however, said company had theretofore, on April 21, 1959, written a letter to Rawls' attorney in which it was stated by said company's claim examiner that "I have carefully reviewed our file and do not feel there is any negligence on the part of our insured, E. M. Moore, and since this is the case, I have no other alternative than to deny your claim." There being no actual contention to the contrary, we believe that there is no question but that Liberty and Allstate had denied liability as of the date of July 1, 1959.

Rawls' attorneys were not unaware of the state of affairs. They decided that it might be well to join Horn-Williams Motor Company as a party defendant to their suit against Harrison, on the theory that Harrison might have been acting within the scope and course of his employment for said motor company at the time of the collision. Accordingly, they filed amended pleadings under date of November 3, 1959, and citation was served upon the Horn-Williams Motor Company the following day.

After some delays, the damage suit was specially set and came on for trial on April 25, 1960. In the period intervening between said trial and November 3, 1959, when Horn-Williams Motor Company was joined as a party defendant, the Trinity Universal Insurance Company (garage liability insurer for said defendant) entered the case in behalf of said company and for Harrison. Just before the trial, and at a time when there was not sufficient time to amend Rawls' pleadings so as to draw new ones deleting complaints as against Horn-Williams Motor Company, Rawls and his attorneys entered into an oral contract under and by virtue of which, for a consideration, Rawls covenanted with the motor company not to sue to impose liability against it on account of injuries sustained in the collision. The parties agreed that the instruments reducing to writing the

Covenant Not to Sue would be attended to at a later time. The trial judge was fully informed, and Rawls, through his attorneys, made an oral motion for continuance in order that his pleadings might be amended so as to delete therefrom any complaint of Horn-Williams Motor Company. Of course, even though Horn-Williams was deleted as a party defendant, Trinity Universal nevertheless had an obligation under its policy to defend Harrison if and in the event he was in fact an agent, servant and employee of said company, acting within the scope and course of his employment at the time of the collision. Trinity Universal chose to stand on its contention that such was not true and notified Harrison thereof and declined to furnish him any defense.

Attorney Carver, appearing for defendant Harrison (who in consequence of Rawls' Covenant Not to Sue Horn-Williams and the constructive deletion from Rawls' pleadings of allegations that Harrison was an agent for Horn-Williams—was "saddled" with the obligation to conduct his own defense) resisted any delay on the ground that the motion for continuance was improper even if reduced to writing. Harrison's witnesses were present and he felt that delay would prejudice him. The court indicated that it would overrule any motion for continuance and suggested that the parties proceed, and that in the parties' oral presentation of pleadings to the jury they omit any reference to the Horn-Williams Motor Company. This was accordingly done. As indicated heretofore, the verdict was for Rawls and a judgment was entered on this verdict.

Judgment in the damage suit was entered under date of May 6, 1960. On May 16, 1960, attorney Carver filed an original motion for new trial in behalf of Harrison. On June 1, 1960, Carver wrote to all three companies, Liberty, Allstate and Trinity Universal, and advised them of the outcome of the damage suit, that motion for new trial had been filed and overruled, and that he had given a notice of appeal in behalf of

Harrison on May 30, 1960. He advised that Harrison was unable to go forward with the case in his own behalf, in connection with filing the requisite appeal and/or supersedeas bond, and requested that the companies, or one of them, take charge of the appeal if all or any of them deemed it advisable to carry the case further. None of the companies acted and judgment in the damage suit became final. Rawls, through his attorneys, sought to levy an execution against Harrison, but it was returned showing that nothing was found upon which the levy could be made.

Thereafter, on November 14, 1960, Rawls filed a suit to establish liability (to Harrison and by and through Harrison to Rawls) against all three insurance companies, Liberty, Allstate and Trinity Universal. Following a jury trial, Rawls obtained a judgment against Allstate in the amount of $8,375.35, plus interest, and a judgment in the amount of $5,075.35, plus interest (as an amount within the aforesaid $8,375.35) as against Liberty, with the provision that it was to be operative only if and in the event satisfaction of the judgment as against Allstate could not be obtained. Harrison had intervened in the suit, seeking attorney's fees as against the same defendants for defending the damage suit, and he obtained a judgment for $1,500.00 in like form, i. e., against Allstate and Liberty with provision made that satisfaction of said judgment indebtedness be first sought to be obtained from Allstate. Neither party obtained any relief as against Trinity Universal. An instructed verdict in its behalf was directed and judgment was entered acquitting such company of any liability. The theory under which the instruction was given is uncertain. We believe it immaterial, however, since by answer returned to a special issue it was found that Harrison was not acting within the course of his employment for Horn-Williams.

Both Allstate and Liberty appealed as against Rawls and Harrison. Trinity Universal is not a party on appeal. In major substance, this is the case before us.

Judgment affirmed.

We will dispose of a number of points of error presented by both Allstate and Liberty through a discussion of our conception of the insurers' liability under the aforesaid insurance contracts under the circumstances outlined. We hold that these points of error should be and are overruled.

Allstate and Liberty make a vigorous argument that by reason of the fact that Rawls' petition in the suit against Harrison asserted that Harrison was acting within the scope and course of his employment by an automobile sales agency and repair garage, the suit was one in which the petition on its face alleged a state of facts excluded from the policy coverage, i. e., one which it had no obligation to defend. One brief contains much language from 50 A.L.R.2d 458 et seq., Annotation: "Allegations in third person's action against insured as determining liability insurer's duty to defend."

The brief quotes from § 7 of the Annotation (p. 469), "Rule that duty exists where alleged facts are within policy coverage", as follows: "In accordance with the general principle stated above, the generally recognized doctrine is that the insurer is under a duty to defend a suit against the insured where the petition or complaint in such suit alleges a state of facts within the coverage of the policy." Allstate further quotes from § 9 of the Annotation (p. 472), "Rule that no duty exists where alleged facts are outside policy coverage", as follows: "It is but the corollary of the rule stated above that a liability insurance company has no duty to defend a suit brought by a third party against the insured where the petition or complaint in such suit upon its face alleges a state of facts which fails to bring the case within the coverage of the policy. Consequently the company is not required to defend if it would not be bound to indemnify the insured even though the claim against him should prevail in that action." Thereafter cases from many states are cited in support of the rule so stated, includin

928

five (5) Texas cases. We are given a résumé of eight (8) Texas state court cases (including those from the Annotation) and one from the Federal Court, Fifth Circuit, which was an appeal from the Northern District of Texas.

█ In nothing cited by the companies do we find any holding that where there are allegations of the plaintiff's petition in his suit against the insured (or him who contended that insurance applied) which stated a cause of action coming within the policy, —*plus additional allegations which, if proved and found by the jury and made the basis for the judgment entered against the insured would take the case out of the provisions of coverage of the policy,*—the insurance company would be relieved of its obligation to defend. It is our holding that in such an event, where the plaintiff might prevail under any theory of the case under averments of his petition, incident to which there could be established a liability upon the insured which would come within the indemnity provisions of the insurance policy, the company would have the obligation, to the extent of its liability in view of the contingency, to furnish a defense to the plaintiff's suit.

The instant situation provides an example more illustrative of what we mean than is our statement of the rule. Here the plaintiff alleged a case, which if proven would establish a liability upon the insured within the contemplation of one or both insurance policies (Allstate and/or Liberty). Then the plaintiff went further, not alternatively or independently, but upon the additional and supplemental proposition that the insured's negligent acts (by reason of which we would be liable) were committed by him while acting as an agent, servant and employee of an automobile sales agency and repair garage, and made said employer an additional party defendant. Under such additional and supplemental allegation, *if plaintiff should establish it,* he would have established the same liability against the insured and the alleged employer. In view of the establishment of the derivative lia-

bility upon his employer the insured would find himself without any insurance protection under the policies of Allstate and Liberty. Such result, "insurance-wise", would follow because of a provision in the policies of both these companies which excluded any policy coverage because the employer's business was that of an automobile sales agency or repair garage.

But if the plaintiff should fail in the attempt to establish the agency alleged, the defendant is demonstrated to have been entitled to the protection of one or both of the policies of Allstate and Liberty (particularly if it is never thereafter established in a suit in which necessary parties are before the court that he was in fact an agent such as the plaintiff alleged but failed to prove). The result would be the same if the plaintiff should decide to forego any attempt to prove such agency, contenting himself with proof which would entitle him to recover a judgment only against the insured. Of course, if in a subsequent suit, between the insured and the company or companies the insured contends owed him the obligation of defense and indemnity, it be determined that the former was in fact the agent of an automobile sales agency or repair garage at the time and place of the collision,—thereby would be established that it was the right of the insurance companies to deny liability and to decline to defend plaintiff's suit. By the same token such determination of fact might establish that the insurer under an applicable garage liability policy was obligated thereunder to furnish a defense to the suit and to satisfy any judgment which might have resulted against the insured, and, if said insurer was made a party defendant, a judgment against it (rather than the other companies) would be proper.

Nearly analogous to the situation under consideration are those cases under the A.L.R.2d Annotation (50 A.L.R.2d 458 et seq.) beginning on page 506 at § 24 "(Allegations of facts partly within and partly outside policy coverage) Rule that duty to defend exists". There (page 507) the rule

is stated to be as follows: " 'Where an action of an injured person is based upon various grounds which are not within the terms of the policy, and on another which is within its terms, the situation does not justify an insurance company in declining to defend.' " Thereafter a case by Judge Learned Hand is discussed, being Lee v. Aetna Casualty & Surety Co., 1949 (C.A.2d N.Y.), 178 F.2d 750, a case where the complaint charged liability against an insured issuing from a risk which was plainly excluded by the policy,—but also alleging a liability arising out of facts which, if proved, would represent a covered risk. Therein was contained this language: "There may be cases, however, in which that question (whether injury was within the policy) will remain uncertain even until the end of the trial, and, if the defendant is right, the insured will be obliged to conduct the defense of a claim which it turns out the insurer has promised to pay." Further: "It follows that, if the plaintiff's complaint against the insured alleged facts which would have supported a recovery covered by the policy, it was the duty of the defendant (the insurance company) to undertake the defence, until it could confine the claim to a recovery that the policy did not cover."

In the instant case Trinity Universal Insurance Company, under the garage liability policy for Horn-Williams Motor Company, had agreed with the attorneys for Rawls (shortly before the trial of the damage suit) to dismiss said Motor Company as a party defendant to the suit. The contract and agreement between them was by way of what is known as a Covenant Not to Sue. This was oral and not in writing, there being insufficient time within which the papers evidencing the contract could be prepared. The trial court was fully informed. Circumstances under which the parties proceeded to trial have heretofore been related. Neither Allstate nor Liberty was notified.

Pursuant to the dismissal (actual or constructive) of Horn-Williams Motor Compa-ny any actual obligation of Trinity Universal to continue with the defense of Harrison was not extinguished. Under its policy it had the obligation to defend Harrison if he were in fact acting within the course of his employment by Horn-Williams.

From what we have already said it should be clear that we believe the situation would not have been altered had Horn-Williams Motor Company remained in the damage suit as a party defendant, with plaintiff Rawls refraining from any attempt to establish the alleged agency. Had this been the circumstance said Motor Company would have been entitled to be dismissed as a party defendant at the conclusion of the evidence in the case.

We are treating Allstate and Liberty as having unconditionally denied liability under their policies prior to the time Rawls joined Horn-Williams Motor Company as a party defendant to his damage suit. This denial of liability constituted a waiver by each of the companies of the duty of any future compliance by Harrison with policy provisions, such as those requiring notice or delivery of suit papers. Womack v. Allstate Insurance Company, 1956, 156 Tex. 467, 296 S.W.2d 233. Pleadings in the suit for damages, in all material substance, reverted to their condition as of the time Allstate and Liberty denied liability upon the dismissal of Horn-Williams as a party defendant. Neither of these companies obtained any benefit as the result of the subsequent change made in Rawls' pleadings in effecting the addition of a party defendant, nor with the later deletion of the party so added. Both events occurred after liability had been denied. Therefore, the companies suffered no prejudice as result of either occurrence. They may not be heard to complain because they were given no notice of what had transpired. Harrison was not estopped to assert liability as against either Allstate or Liberty in proceeding to trial in the damage suit, or in resistance to Rawls' motion for

continuance, and he waived no contractual right against either company by having so acted.

Allstate and Liberty contend that the transaction and agreement made between plaintiff Rawls and the insurance company for Horn-Williams Motor Company legally resulted in a release of all Rawls' claims for damages. In other words they claim that the release was to Harrison's benefit and foreclosed any right on the part of Rawls to obtain any additional amount as damages. It is to be noted that Harrison did not so claim upon the occasion of the trial of the damage suit. The point of error raising the contention does not include any claim for credit of the amount received as consideration for the Covenant Not to Sue upon the amount of Rawls' judgment.

■■ The matter of whether a transaction has the character of a release, or contrarily the character of a Covenant Not to Sue which does not extinguish the whole liability, may be a matter of fact. If it is a matter of fact, then the issue could be raised as a matter of defense. It was not raised by the defendant Harrison, who accepted it for what it was stated to be to the court, a covenant whereby Horn-Williams Motor Company was dismissed as a party against which plaintiff Rawls was attempting to impose liability. The trial proceeded and resulted in a judgment against Harrison, which judgment has become final. Harrison is bound thereby. We believe that the insurance companies' contention in this regard comes too late and at a time when their right to raise the matter as an issue has been foreclosed.

■ By two points of error Allstate and Liberty contend that there was no evidence, and in the alternative an insufficiency of evidence, in relation to the answers of the jury returned to Special Issues Nos. 1, 2, 2-A, 3 and 4.

Special Issues Nos. 1 and 2 were issues upon which Rawls assumed the burden, one to establish that Harrison was not acting within the scope and course of his employ-

ment at time and place of the collision, and the other to establish that Harrison had the permission of the owner of the automobile being driven by him at the time of the collision. Special Issue No. 2-A was one on which Allstate assumed the burden and sought to establish that at the time of the accident Harrison's operation of the non-owned automobile was a material deviation by him from the permission given to drive the automobile. Special Issue No. 3 was one upon which Harrison assumed the burden of establishing an amount as reasonable attorney's fee for his conduct of the defense of the damage suit brought against him by Rawls. Special Issue No. 4 was one the burden of which was cast upon Allstate and Liberty to establish that the failure of Harrison to notify them when Horn-Williams Motor Company was dismissed out of the case, and that Trinity Universal was refusing to furnish Harrison a defense to Rawls' suit, constituted a waiver by Harrison to demand that said companies furnish any defense to said suit.

We will not discuss the contentions made other than to state that we would overrule them if severally and properly made and adequately briefed. The points of error are overruled under the provisions of Texas Rules Civ.Procedure 418, "Briefs: Contents", as being multifarious and too general to invoke consideration on appeal.

■ A point of error raises the contention that Harrison was, as of the time of the collision, the agent, servant and employee of Horn-Williams Motor Company, acting within the scope and course of his employment. The point is overruled. The question was one of fact. By answer to a special issue the fact the jury found that Harrison was not acting within the scope and course of his employment by Horn-Williams Motor Company.

■ A point of error presented by Allstate raises the contention that as of the time and place of the collision Harrison was not, as a matter of law, operating the Moore automobile with the permission of

Moore. Another point contends that as of the time and place of the collision, as a matter of law, Harrison made a material deviation from the permission granted him by Moore to use said automobile. Both matters constitute questions of fact. By answers to special issues, the questions were resolved. The jury found that Harrison had Moore's permission to operate the automobile and that there was no material deviation.

A point of error raises the contention that since the draft which paid Rawls and his attorneys the consideration for the Covenant Not to Sue Horn-Williams Motor Company contained the following language: "Endorsement hereof constitutes a release in full of compromise settlement of all claims for damages v. Horn-Williams Motor Co. et al and Robert L. Harrison resulting from accident occurring on above date" (2–27–59), and was endorsed and negotiated by Rawls and his attorneys, such constituted a complete release of Harrison as a matter of law, which inured to the benefit of Allstate and Liberty; and that by reason thereof Rawls has become estopped to claim damages against Harrison, and by and through Harrison against said insurance companies. Even if we err in our conclusion, heretofore stated, that Allstate and Liberty are not entitled to assert the contention, we have reached the further conclusion that the point of error should be overruled for an additional reason.

■ Evidence in the record discloses that the attorneys for Trinity Universal (in behalf of Horn-Williams Motor Company) mailed the Covenant Not to Sue, along with the draft in question, to Rawls' attorneys in Fort Worth. Therefrom it is evident that the consideration recited to be paid was not to be considered as received in complete satisfaction of the claim of Rawls, and that it was particularly intended that Rawls' suit against Harrison would continue to be prosecuted. Indeed, it is to be noted that the agreement relative to the Covenant Not to Sue was made orally, and

during the very time the papers evidencing the agreement and the draft which was to furnish the consideration therefor were in the process of preparation, Rawls' suit against Harrison was in actual progress. Evidence in the record establishes that neither party to the Covenant Not to Sue understood it to be and considered that it was either in complete satisfaction of Rawls' claim for damages or that it was to relieve anyone from liability other than Horn-Williams Motor Company. While it might be subject to the contention that the endorsement and negotiation of the draft, coupled with the attendant circumstances, raised an issue of fact, it could not be said that Harrison was released as a matter of law. In this connection see 36 Tex.Jur., p. 799 "Release", § 4, "Covenant not to Sue as Release", 13 Tex.Jur.2d, p. 274 et seq., "Contracts", § 116, "Construction of several instruments comprising one agreement" (10–A Tex.Jur., "Contracts", p. 346 § 173). The point of error is overruled.

Points of error presenting the proposition that the trial court erred in overruling the motions for instructed verdict and the motions for judgment notwithstanding the verdict, filed in behalf of Allstate and Liberty, are overruled. Basis for the contentions made under these points falls within the foregoing discussion of other points, holdings upon which would necessarily control the disposition of these.

■ Allstate presents a point of error complaining because Spencer Carver, attorney for Harrison, testified in the presence of the jury that Allstate had negotiated with him for settlement of Harrison's claim. The claim in question was that made by Harrison in connection with his claim against Allstate and Liberty for $1,500.00 as attorney's fees necessarily incurred in the conduct of Harrison's defense to Rawls' damage suit (which Allstate and Liberty refused to defend). The following outlines the occurrence of which complaint is made:

Mr. Walker (Allstate's counsel): "Q. Now my question was, you asked Mr. John-

ston on Monday and didn't he tell you that your request for an attorney's fee of $1500.-00 was excessive for experienced trial lawyers in these matters?"

Mr. Carver: "A. Let me preface it with all the statements that were made, Mr. Walker."

Mr. Walker: "Q. Now please, you can answer that question, can you not?"

Mr. Carver: "A. If the Court please, I object to a question which seeks to elicit conversations made in a proposal of compromise and settlement of a claim and to answer his question I must do so."

Allstate, through counsel, made a motion for mistrial because of the statement. The court retired the jury to hear the motion and then recalled it and gave the following instruction: "Ladies and Gentlemen of the Jury, I am going to instruct you that the statement made by the witness now on the witness stand in reference to a compromise and settlement is withdrawn from your consideration and it is not before you as evidence in this case. It is withdrawn by the Court."

The point of error is overruled. In our opinion the statement made was harmless to the interest of Allstate. Even if it should be otherwise considered the prejudice was of curable type and was removed by the instruction of the court.

A point of error presented by Liberty presents a complaint bearing upon a phase of the judgment not heretofore mentioned. It constitutes a part of the judgment appealed from by said company against Allstate and against Service Fire Insurance Company of New York, which carried a policy of collision insurance on Moore's automobile. It seems that an intervention was filed in the suit by Rawls and Harrison against the three insurance companies, whereby Service Fire sought to recover Moore's damages, or that part thereof which Service Fire had paid Moore. Moore's automobile was being driven at time of the collision by Harrison. Moore's automobile was substantially damaged as the result of the collision. It was because of this loss and damage that Service Fire made the payment to Moore. Since the statement and discussion in the record is already rather complicated by reason of so many insurance companies being involved, we believe that it will be simpler to treat the situation as though it was Moore rather than his collision carrier which is involved in the intervention. We will proceed to do so, with the comment that an examiner of the opinion who is particularly interested in this phase of the case will remember that Moore had settled his collision case and subrogated his interest (at least to the extent of the amount it paid) as against any person, firm or corporation which might be liable in damages to him.

With such in mind we will restate the proposition. Mr. Moore, with whose rights the opinion has not been concerned until this time, sustained an injury to his 1959 Ford Ranchero as the result of the collision. Harrison had been driving it at time of the collision, and was the bailee thereof. Moore's suit was filed, by way of an intervention, in the suit for damages by Rawls against Harrison. The amount sought by reason of the damages done to the Moore automobile was $1,129.92. Claim therefor was against Harrison and/or Rawls.

Moore's suit was filed after the time both Allstate and Liberty may be treated as having denied all liability to Harrison under and by virtue of their policies. Without respect to the propriety of Moore's claim against either Allstate or Liberty, and foregoing any discussion thereof, we will note that when the Trinity Universal Insurance Company made a deal with Rawls to get Horn-Williams Motor Company dismissed out of the case by way of a Covenant Not to Sue, it contracted in like manner with Moore (in behalf of Horn-Williams), based upon the consideration paid to or in behalf of Moore in the amount of $300.00. We might mention that it is our opinion that there was no coverage

as to Moore's damages under the Trinity Universal policy and it very well might have been that this $300.00 came from Horn-Williams.

Before the trial of the damage suit began both Rawls and Harrison stipulated with Moore (it is to be remembered that it was actually his successor, the collision insurance company) that $900.00 would be the amount of damages to which he would be entitled in the judgment, if and in the event either Rawls or Harrison, or both, be determined to be liable for the collision. In view of the jury findings returned on the matter of responsibility for the collision the judgment decreed that intervener Moore recover of and from Harrison damages in the amount of $900.00.

In the later suit, by Rawls and Harrison against Allstate, Liberty and Trinity Universal, Moore intervened and sought to collect the $900.00 decreed in the damage suit judgment, but as against Liberty only. Prior to such time an execution was sought to be levied to collect the $900.00 from Harrison, and such execution had been returned with the notation made that nothing was found upon which to levy. Liberty filed an answer to Moore's plea, in which it asserted that if and in the event there might be any liability to Moore for his damages it would be that of Allstate Insurance Company and/or Trinity Universal Insurance Company and not that of the Liberty Insurance Company. The prayer appended to said answer was only that the Moore plea of intervention be denied and that the Liberty Insurance Company "go hence without day and recover its costs, and for general and special relief." In the judgment appealed from it was decreed that Moore (or rather his collision carrier) recover of and from Liberty Insurance Company of Texas the sum of $900.00 with interest from date of May 6, 1960.

We will attempt to correctly represent the point of error advanced by Liberty Insurance Company. It complains because the judgment was rendered against it when, in view of the findings of the jury's verdict, the judgment should have been against the Allstate Insurance Company (as in the case of the judgment in behalf of Rawls and Harrison) as the company having primary coverage, with the liability of Liberty to attach only in the event satisfaction of the judgment could not be obtained fom Allstate, or in any event that Liberty should receive contribution from Allstate.

Disregarding any question of the propriety of the Moore judgment (by and through Harrison and because of Moore's judgment against him) against either Allstate or Liberty, but considering it as necessarily proper against one or the other or both, we have arrived at the conclusion that the point of error should be overruled.

■ Liberty Insurance Company, when served with the intervention, had the right to implead Allstate as a party defendant in said plea and to lay a predicate for the right to have the court enter judgment against Allstate, as first in priority as to any liability, or for a judgment over against Allstate in the alternative. T.R.C.P. 38, "Third-Party Practice". Not having done so, the right was waived. The right being waived, Liberty would not be entitled to any benefit from the jury findings to the effect that Harrison's use of Moore's automobile at time and place of the collision was within the scope of Moore's permission that Harrison use the same. It could be only by reason of an asserted right to benefit from said finding that Liberty could make the contention it does make under the point of error. Not being possible to sustain the point of error it would accordingly be overruled. With such overruled, Liberty's position must be considered to persist as though the point had never been presented. Under the judgment of the trial court it is Liberty Insurance Company of Texas which is liable for the $900.00 in damages to Moore, or to the Service Fire Insurance Company of New York, successor in interest thereto.

Judgment affirmed.