The **FIDELITY AND CASUALTY COMPANY OF NEW YORK, Appellant,**

v.

**HORTON & HORTON CUSTOM WORKS, INC. et al., Appellees.**

No. 17152.

Court of Civil Appeals of Texas, Fort Worth.

Jan. 8, 1971.

Rehearing Denied Feb. 5, 1971.

Cantey, Hanger, Gooch, Cravens & Scarborough, Fort Worth, Jackson, Walker, Winstead, Cantwell & Miller, H. Dudley Chambers and Jack Pew, Jr., Dallas, for appellant.

Touchstone, Bernays & Johnston, and Jim E. Cowles, Dallas, for appellees.

## OPINION ON MOTION FOR REHEARING

MASSEY, Chief Justice.

The opinion of November 20, 1970, is withdrawn, with the following substituted therefor:

Suit was by the Fidelity & Casualty Company of New York, hereinafter termed the insurance company, against Horton & Horton Custom Works, Inc., and Interamerica Modification Center, Inc., hereinafter called Horton, and the Pacific Airlines, Inc., hereinafter termed Pacific.

Pending in Federal Court was a damage suit brought by Pacific against Horton. It was the contention of Horton that the insurance company owed it the obligation to defend the suit under an existent contractual obligation. In other words it was Horton's contention that the insurance policy issued to it by the insurance company provided for the latter's defense of said suit. The insurance company denied liability in respect to the defense demanded and brought the present action seeking a declaratory judgment to the effect that the company was not liable and responsible to afford such defense. Countering, Horton, joined by Pacific, sought declaratory judgment to the effect that the insurance company was liable and responsible to make the defense.

Trial was before the court without intervention of a jury. Declaratory judgment was rendered for Horton. The insurance company appealed.

We are primarily concerned here with a stipulation of the parties upon whether there had been a "completion" of the work for which Horton had contracted to perform in connection with repair, modification and modernization of a particular airplane at the time of the accident and damage resulting to the aircraft on October 31, 1966. To be taken into consideration, also, are other facts stipulated by the parties, evidence placed in the record, pleadings of the parties in substance or as to be implied

in view of the submission of the case to the court without intervention of the jury, and the pleadings in the suit in Federal Court.

The material stipulations of fact by which Horton and Pacific bound themselves, unaltered and unimpaired as of the time of the trial and judgment below, reads as follows:

"* * * Horton was to accomplish certain repairs and modifications * * *. Thereafter, Horton & Horton undertook to and did in fact perform the work called for in the agreement. *This work was completed by October 31, 1966.* (It is understood and agreed that a dispute exists between Pacific and Horton regarding whether or not all the work was performed in a good and workmanlike manner). (Emphasis supplied for purposes of the opinion.)

"On Sunday, October 30, 1966 Horton represented to Pacific that all work had been completed. This representation was made to Ted Sutphen, who was a representative of Pacific, who was present in Fort Worth, Texas for the purpose of overseeing the completion of modifications and overhaul.

"On or about October 28, 1966, a Pacific Air Lines flight crew composed of a captain and a co-pilot arrived in Fort Worth from San Francisco. Mr. Yarnell was the captain and Mr. Marshall was the co-pilot. Both of these men were employees of Pacific.

"On the afternoon of October 30, 1966 the captain, Mr. Yarnell, was advised that the aircraft was ready. He proceeded to Meacham Field and in company with his co-pilot taxied the aircraft to the compass rose for the purpose of checking the accuracy of the navigation equipment. After accomplishing this, he taxied the aircraft back to the Horton hangar, where it was parked.

"On the morning of October 31, 1966 the aircraft in question was boarded by Mr. Yarnell, who was acting as pilot in command, Mr. Marshall as co-pilot and Ted

Sutphen. No other people were on board the aircraft. Captain Yarnell started the aircraft's engines and was taxiing the aircraft when the landing gear retracted. The retraction occurred after Captain Yarnell had taxied the aircraft approximately 40 yards. When the gear retracted, the aircraft skidded on its fuselage, causing damage to portions of the aircraft. These are the damages about which Pacific complains. * * *

"* * * *

"Horton had performed certain repairs and modifications on the landing gear system as part of the work performed during the period from July 25, 1966 to October 31, 1966.

"The accident on October 31, 1966 involving the retraction of the gear and the damages resulting therefrom occurred on the premises of Horton.

"The policy of insurance purchased by Horton provides no contractual liability coverage. Said policy also provides no products liability coverage.

"A justiciable controversy exists between the parties hereto with respect to coverage. There is presently on file in the United States District Court, Northern District of Texas, a lawsuit entitled Pacific Air Lines, Inc., et al v. Horton & Horton Custom Works, Inc., et al, Civil Action No. CA4–1100, in which Pacific alleges negligence and breach of contract and warranty on the part of Horton in the repair and modification work and that such negligence and breach of contract and warranty was the proximate cause of damages to the aircraft in question which occurred on October 31, 1966."

Under the findings of the trial court the aircraft was in the custody of Pacific, its owner, at the time of the accident and consequent damage. A further finding was against the contention of Horton and Pacific in that it recited: "That no coverage is extended under the Hangarkeepers Liability Endorsement of said policy." There

was no cross-point of error applicable to the above finding of the trial court advanced by Horton and Pacific attacking the findings and seeking to obtain an affirmance of the judgment on the theory that the liability of the insurance company was supportable on any ground other than that which the trial court found.

The trial court found that there was coverage under the insurance policy in question by Coverage "B", thereof relating to Property Damage Liability—Premises— Operations (of or by Horton & Horton Custom Works, Inc.); and further, that an exclusionary paragraph of the policy, Exclusion "K", was without application to limit or exclude the coverage upon which Horton and Pacific Airlines insist.

There is no question but that Coverage "B" was applicable unless Exclusion "K" extinguished it (the applicability of such coverage). The exclusion was specially plead by the insurance company, obliging its adversaries to satisfy its inapplicability by proof. We will set forth the pertinent provisions of Exclusion "K":

"This policy does not apply: * * * under coverages B and D, to injury to or destruction of * * * property in the care, custody or control of the insured (Horton) * * * as to which the insured for any purpose is exercising physical control, * * * *or (to) work completed by or for the named insured, out of which the accident arises.*" (Emphasis supplied.)

Pacific was exercising the physical control of the aircraft for the purpose of testing it by way of take-off and flying (and/or perhaps landing the same at the Horton premises) prior to acceptance of the plane and the work. Probably Pacific's inspectors, after becoming satisfied that no reason existed to return the same to Horton (on the ground at its premises) for further work would have indicated its acceptance of the aircraft by flying it on to California before landing.

In the opinion for which this is substituted we stated: "Because of the stipulation, specifically wherein it was stated: 'This work was completed by October 31, 1966', we believe that the provisions of Exclusion 'K' of the insurance policy must be held to have application. The effect of such application would be to exclude the insuring provisions of the policy effective if it could be proper to deem the work complete." On rehearing we have concluded that such statement was erroneous. The disposition of the appeal is in no way controlled by the stipulation formerly deemed of such consequence. A discussion is warranted.

In a review of the record we note that Horton and Pacific proceeded to show usage and custom relative to Horton's practices in connection with repair work including planes previously worked on for Pacific. Generally, and as applied to flyable aircraft brought to Horton for work to be done, with anticipation that upon "completion" of the work of Horton they would be flown and returned to some other site, the usage and custom was like unto that of private passenger automobiles of the general public placed in repair garages. In such instances the customer calls to receive delivery of his automobile anticipating that repairs are complete; that he will receive it in operating condition so that it can be driven.

In the case of an aircraft, according to what is reflected by the record before us, a Horton customer is entitled to receive delivery of his airplane in operating condition so that it can be taxied into position where it can start its run for "take-off" and make such run and become airborne, etc.

■ From the various cases noted in Words & Phrases, Vol. 8, p. 400, "Complete; Completion; Completed", on "Work," we believe that as a general rule: where "work" is performed in behalf of another upon an apparatus in order that the apparatus may perform some function

the "work" is not legally completed and in law is deemed incomplete in the event the workman has omitted or failed to perform any substantial requirement essential to the intended function of the apparatus, the performance of which the person for whom the work is done possesses a contractual right to demand. Such a rule, we believe, should have application in this case. See Couch on Insurance, 2nd Ed., Vol. 12, p. 21, Sec. 44:435, "What constitutes completion". See also annotation under 156 A.L.R. 1285, Anno: "Risks covered by contractor's liability policy", the language on p. 1286 under Daniel v. New Amsterdam Casualty Co., 221 N.C. 75, 18 S.E.2d 819 (1942).

■ As applied to the aircraft in question there is evidence in the record upon the work orders pursuant to which Horton performed work on Pacific Airlines' plane that a part of its contractual obligation involved "revised circuitry landing gear control". There is also evidence that while in Horton's shop there was some sort of trouble with the "retraction" of the landing gear, and that a delay in the "delivery" of the aircraft was occasioned while some character of work was done involving an attempted correction of the malfunction. It is not sufficiently established that such work was done because of Horton's contractual obligation; and the exact nature and cause of the malfunction has not been explained.

Likewise unspecified and lacking in clarity is evidence to show the actual cause of the retraction (collapse) of the landing gear during the course of the test flight activities when the body of the aircraft was damaged. It was as the result thereof that Pacific Airlines suffered damages, to recover which it filed suit in Federal Court.

The mere fact that the landing gear collapsed does not prove that Horton's "work" on the aircraft was not "completed". To prove that fact there would be a necessity for evidence showing that the cause was the result of non-performance or inade-

quate-performance of some act by Horton and its employees which Pacific was entitled to contractually demand. In other words it is possible that something about the landing gear body broke and/or came apart which in no degree was due to any omission of performance, or negligent performance, under Horton's contract with Pacific Airlines.

There is no doubt, however, that evidence supplying such deficiency in proof should be available upon another trial. We have concluded that only by the aid of such evidence may it be determined with certainty whether Horton's contractual work for Pacific Airlines was "completed" within the contemplation of Exclusion "K" of the insurance policy.

In the conduct of the trial Horton and Pacific proceeded to treat the stipulation relative to Horton's work having been "completed by October 31, 1966", as though it had no relation to Exclusion "K" of the insurance policy. Obvious in the manner of their introduction of testimony was these parties' state of belief upon the effect and meaning of their stipulation, which was merely that Horton "thought" all the work required of it under the contract with Pacific had been performed.

Horton and Pacific, cognizant of their burden to show that the collapse of the latter's aircraft did not fall within Exclusion "K", presented their evidence by the manner in which their evidence would have been presented if there had been no such stipulation. Furthermore, there was never any objection to the introduction of such evidence. No mention was made before the court that there had been an agreement by the parties that "completion" of all Horton's contractual obligations had taken place. Obviously there would have been action taken or at least urged by Horton and Pacific in the trial court if the insurance company had insisted before that court upon the interpretation of the stipulations which it contends before the appellate court should entitle it to prevail on appeal.

It is of further interest to note that trial of the case was begun February 2, 1970 and apparently concluded the same day; but that the written stipulations containing that relative to work "completion" was not filed until March 24, 1970. Judgment was signed April 3, 1970. It is reflected in the transcript that the trial judge had not read the stipulations at time he heard the evidence in the case.

In the Findings of Fact and Conclusions of Law the Court found that Horton failed to perform all the work contracted, and failed to perform the work in a good and workmanlike manner, and that such was negligence and a proximate cause of the collapse of the aircraft; and also found that there was a breach of contract and warranty. A further finding, as one of fact, was that the work on the aircraft was not completed and that the plane had not been finally accepted by Pacific. A finding, as a conclusion of law, was that Exclusion "K" was without application and that a contractual obligation has arisen under which the insurance company was obligated to defend the lawsuit pending against Horton in Federal Court.

Our conclusion is that in the instant case, under the circumstances and relative to the question of whether the contract was "completed" at time of the collapse of the aircraft, the matter of contract completion became a mixed question of law and fact. Had the case been one tried before a jury it would have been the court's duty to separate the question of fact from that of law in the submission in the charge, as by segregated issues or instructions. In such a case the court would not have been controlled by the stipulation; and neither would the court be controlled, in our opinion, where the entire case was submitted to it without a jury. See Speer's Law of Special Issues, Sec. 25, "Mixed questions of law and facts."

Since a question of law would be involved the stipulation could not have operated to control the court and prevent the finding on facts which might—when applicable law and legal principles were applied thereto—compel the ultimate conclusion that the "work" of Horton remained incomplete.

Furthermore, we hold that there was ambiguity, albeit latent, in the language of the stipulation. It is subject to the reasonable interpretation that what was meant was that Horton "thought" his work or contractual obligation to be complete; that work was complete "subject to" absence of any remedial action for which there was contractual responsibility discovered on the test flight activities; and/or subject to an "acceptance"—as complete—by Pacific. The ambiguity therein would invoke a requirement for construction. The rules relative to construction of a stipulation incident to trial embrace those relative to construction of contracts and add others. See generally the texts of 53 Tex.Jur.2d, p. 312, et seq., "Stipulations"; 50 Am.Jur., p. 605, et seq., "Stipulations"; and 13 Tex. Jur.2d, p. 109, et seq., "Contracts", Secs. 109–166; 23 Tex.Jur.2d, p. 520, "Evidence", Sec. 351, "—Patent and latent ambiguities".

It is to be observed that the language of a stipulation will not be so construed as to give it effect as an admission of fact obviously intended to be controverted. Actually, in the instant case there is a question of the efficacy of the stipulation to surrender right of either Horton or Pacific to insist that Horton's performance under the contract was not complete; the right being substantial and power of waiver not shown to have been specifically within any attorney's authorization. A forfeiture is involved, and even in respect to contracts where the language is capable of two constructions, slight circumstance would be used to avoid that calling for the forfeiture. Incident to the requisite construction the intent of Horton and Pacific would be that which would control. Of their intent there is no doubt; they intended that remedial measures by Horton would be undertaken if the need therefor (within its contractual responsibility) was disclosed by the test flight.

While there was some evidence that Horton had the contractual obligation to remedy the defect which resulted in aircraft collapse, we are of the opinion that such evidence lacked sufficient probative force essential to support the judgment rendered in its behalf. For that reason the judgment of the trial court must be reversed.

Evidence in the record discloses that Horton has taken the position that if there were "items lacking or had not been performed" which caused the collapse (retraction of the aircraft landing gear) it would have done corrective work if such malfunction "was in the area of our responsibility." Evidently the question of whether the malfunction of the landing gear rested within the area of Horton's contractual responsibility will constitute a substantial question to be determined in the anticipated trial in Federal Court, certainty as to which would establish the insurance company's liability. Of course it may be that Horton will be found liable to Pacific though under facts which would acquit the insurance company of any policy liability. See Lee v. Aetna Casualty & Surety Co., 178 F.2d 750 (C.A.2d N.Y., 1949), by Judge Learned Hand. We noted this holding in Liberty Insurance Company of Texas v. Rawls, 358 S.W.2d 920, 929 (Fort Worth Civ.App., 1962, no writ hist.).

For the reasons above stated and because there is some evidence, albeit insufficient to support the judgment; and it being apparent that the case was not fully developed in that there should be available evidence upon retrial to supply an answer to the question of whether Horton's obligation of contractual performance was or not completed, matter which should be ascertained as essential to a just result, our judgment is one of reversal with remand to the trial court. Texas Rules of Civil Procedure 434, "If Judgment Reversed."

All points of error have been considered, and, except as necessarily sustained incident to holdings indicated in the opinion. are overruled.

Reversed and remanded.